# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ALBERT D. PAGE, #298953,    )
                                     )
                 Plaintiff,   )   Civil Action No. 0:07-3060-HFF-BM
                                     )
v.                             )
                                     )
CECILIA REYNOLDS, Warden;   )
JAMES JEFFERSON, Lieutenant   )   **REPORT AND RECOMMENDATION**
(Supervisor); NANCY PRICE,   )
Officer; and JON OZMINT, Director)
South Carolina Department of   )
Corrections; LEMANDY PERRY;   )
ALLISON MCCASKILL; DR.   )
MCKINNEY and DR. DUFFY, all   )
in their official and individual   )
capacities.   )
                                     )
                 Defendants.   )
_____)

     This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

     The Defendant Duffy filed a motion to dismiss on April 3, 2008, asserting that this Defendant had never been identified or served with process. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 7, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted. Thereafter, the remaining Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 28, 2008, following which a second Roseboro order was entered on May 29,



1

2008.

Plaintiff filed a memorandum in opposition to the Defendants' motions, with attached exhibits, on July 2, 2008. Defendants' motions are now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in his verified Complaint[2] that on October 6, 2006, while he was in the cafeteria serving line at the Kershaw Correctional Institution (KCI), he was "snatched from behind in a very forceful, jerk like manner", resulting in pain and injury to his neck and middle back, as well as exacerbation of an existing lower back condition. Plaintiff alleges that this action was taken by the Defendant Officer Price, who told him to shut-up, sit down and eat. Plaintiff alleges that after he returned to his unit he reported this incident to his unit officer (Tammy Wilson). Wilson phoned her supervisor, the Defendant James Jefferson, who instructed her to fill out an incident report and call medical.

Plaintiff alleges that he was then escorted to medical by a "Sgt. Kirkland", where he was seen by "Nurse Phillips". Plaintiff alleges that Nurse Phillips instructed him to take some medicine and get some rest, and scheduled Plaintiff an appointment to see the Defendant Dr. McKinney.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions to dismiss and/or for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Plaintiff alleges that he and another inmate, Timothy Harris (who allegedly witnessed the incident), were later summoned to "operations" to be questioned by Jefferson, Alice Fleming, and someone named "King". Plaintiff alleges he told the group what had happened, which was corroborated by Harris, but that Price denied his version of the event. Plaintiff also alleges that Price "falsified [an] official state document" to cover up her conduct (apparently an incident report).

In addition to these allegations, Plaintiff alleges that he has been labeled a "trouble maker" by the staff at the Kershaw Correctional Institution (where he was housed during the relevant time period), and that he has been targeted for frivolous write-ups and other undue harassments. Plaintiff alleges that on April 25, 2007, the Defendant Perry kicked him out of the medical unit because he was looking out of the window. Plaintiff claims that a "frivolous" incident report was filed, resulting in him being placed in disciplinary detention. Plaintiff also complains that he has not had a proper examination for his back condition as a result of this incident, and that he is in "great pain every day".

In an amended complaint filed November 15, 2007, Plaintiff further complains that Dr. McKinney has refused to see him on three separate occasions, and that the Defendant Dr. Duffy has also refused to treat him. Plaintiff seeks various declaratory and/or injunctive relief, as well as monetary damages. See generally, Verified Complaint, as amended.

In support of summary judgment in the case, the Defendant Price has submitted an affidavit wherein she attests that during the relevant time period she was a correctional officer at KCI, and that on the date in question she was working security in the cafeteria when she witnessed the Plaintiff moving to the service line a second time. Price attests that she ordered Plaintiff to leave the line, but that he continued to go to the serving line to get a food tray. Price attests that after three direct orders, which were disregarded, she placed her hands on the back of Plaintiff's jumpsuit and

3



pulled him out of line.

Price attests that an inmate who refuses to obey a direct order is subject to the minimal use of force necessary to enforce compliance with an order, and that by refusing to obey her commands Plaintiff created a disturbance thereby threatening the safety and security of the institution.  Price attests that, under these circumstances she would have been justified in using pepper gas to enforce compliance, but instead used only minimal force by simply pulling him out of line.  Price attests that after she pulled Plaintiff from the line, he did not complain of any injury, did not demonstrate any injury in his mannerisms or appearance, and that he left the cafeteria without assistance.

When Plaintiff subsequently complained to Shift Supervisor Jefferson that he was injured, he was sent to medical and Price filled out a use of force report, which is attached to her affidavit as Exhibit A. Price attests that she also charged Plaintiff with a violation for refusing to obey orders, which is attached to her affidavit as Exhibit B.  Plaintiff was later found guilty of refusing to obey orders in his disciplinary hearing, a copy of which is attached to Price's affidavit as Exhibit C.  Price attests that Plaintiff also filed at least one grievance based upon this incident, but that her use of force was found to be justified by the Division of Investigations.  See generally, Price Affidavit with attached Exhibits.

The Defendant James Jefferson has also submitted an affidavit, wherein he attests that he is a lieutenant at the KCI.  Jefferson attests that Plaintiff was convicted of failing to obey orders as a result of this incident, and that he had also been previously charged with this same violation a few days earlier.  Jefferson further attests that Officer Price was found to be justified in her minimal use of force on this inmate since he had disobeyed several direct orders from her.  Jefferson attests that, after the incident in question, Plaintiff was brought to see him as the Shift Supervisor on duty,

4



at which time he was walking on his own power and did not appear to be in any pain.  Jefferson attests that, because Plaintiff claimed he was injured, he referred Plaintiff to medical, where he was seen by Nurse Phillips.  Jefferson attests that Plaintiff grieved this incident to the Division of Investigations, which found  no evidence to substantiate his allegations of improper conduct.  See also, Exhibits A & B to Jefferson Affidavit.

The Defendant Allison McCaskill has submitted an affidavit attesting that she is a registered nurse at the KCI, and that in this capacity she has reviewed Plaintiff's medical records. McCaskill attests that Plaintiff's medical records reflect that he had been treated numerous times for a back injury prior to October 6, 2006, and that he was also treated for this condition immediately after this incident, as well as throughout his period of confinement at KCI.  McCaskill attests that Plaintiff's medical records establish that his complaints of back pain did not originate from the October 6, 2006 incident. McCaskill further attests that Plaintiff was seen by medical staff after the incident on October 6, 2006, at which time he entered the medical wing on his own and without difficulty, and that he showed no exterior evidence of injury from this incident, although he complained of pain when twisting from side to side. McCaskill attests that Plaintiff was seen again in the medical office on October 12, 2006, as well as by Dr. McKinney on October 18, 2006. Plaintiff was prescribed medication to treat his discomfort.

McCaskill further attests that Plaintiff has received several outside consultations in regards to his complaints of back pain, including trips to an orthopaedic clinic and to a neurosurgeon. McCaskill attests that the neurosurgeon recommended on April 12, 2007 that Plaintiff continue on his current conservative treatment for his condition, as he was not a candidate for surgery.  Plaintiff has also been given a theraband to assist in treating his back pain, and that after he misplaced the first theraband issued by medical staff a second theraband was ordered for him.  Plaintiff was also



provided with an abdominal binder, which provides support to his lower back.

With regards to Plaintiff's complaints that he has not been allowed to see medical personnel on occasion, McCaskill attests that Plaintiff wore a pink jumpsuit while at KCI, designating him as an inmate with a history of sexual misconduct violations within the Department of Corrections. McCaskill attests that Plaintiff was dismissed from the medical wing on multiple occasions due to his refusal to face forward in the inmate waiting area and persisting to stare at female correctional officers in the officer's station. McCaskill attests that an inmate may be dismissed from the medical wing for misbehavior unless it is a medical emergency, and that Plaintiff was never dismissed from medical at any time when he presented for a medical emergency. See generally, McCaskill Affidavit.

The Defendant Lemandy Perry has submitted an affidavit wherein he attests that he is a correctional officer at KCI, and that with regard to Plaintiff's claim that he [Perry] threw Plaintiff out of the medical unit on two separate occasions before he was able to be treated, the only occasion on which he [Perry] dismissed Plaintiff from the medial wing was on August 6, 2007 when Plaintiff refused to face forward, remain still, and refrain from talking while in the inmate waiting area, as all inmates are instructed to do in the medical ward. Perry attests that it is imperative to maintaining institutional security that all inmates comply with these instructions, because there is only one correctional officer overseeing that area. Perry attests that inmates are required to abide by the rules while in the medical wing, and that policy provides that an inmate who creates a disruption will be escorted from the area immediately. See also, Exhibit A attached to Perry Affidavit.

Perry attests that on August 6, 2007, Plaintiff was staring at her through the officer station window, and that when she directed him to face forward and comply with the rules of the medical wing, he continued to stare at her through the window, refusing to obey her commands.



Perry then asked Nurse McCaskill if Plaintiff's medical situation constituted an emergency, and that when McCaskill told her that Plaintiff could be dismissed for misbehavior, she dismissed him from the medical wing. Plaintiff was also charged with refusing to obey an order (see attached Exhibit B), and was convicted of this charge by the disciplinary hearing officer on August 29, 2007 (see attached Exhibit C). Perry attests that Plaintiff was treated the same way as any other inmate in regards to this situation. See generally, Perry Affidavit with attached Exhibits.

Finally, Dr. Harry McKinney has submitted an affidavit wherein he attests that he is a physician employed by the Department of Corrections at KCI. McKinney has attached a copy of Plaintiff's medical records to his affidavit as Exhibit A. McKinney attests that Plaintiff's medical records reflect that he has complained of back problems resulting from a 1999 motor vehicle accident since his initial evaluation in 2004, and that Plaintiff's records also reflect an injury to his back from a 1985 motor vehicle accident. See Bates Nos. 7702-A-030 - 031. McKinney attests that Plaintiff was seen in the medical unit on October 6, 2006, shortly after the incident at issue, at which time Plaintiff evidenced no physical trauma and walked into the medical unit without any problems. McKinney attests that, while it may be possible that the October 6, 2006 incident exacerbated Plaintiff's back problems, in his [McKinney's] opinion Plaintiff has chronic degenerative disc disease, and his back problems did not arise from the incident of October 6, 2006.

In regards to Plaintiff's medical treatment, McKinney attests that Plaintiff's extensive medical records demonstrate that he has been seen and treated on numerous occasions for his complaints of back pain and other problems, and that since this incident he has been seen by a neurosurgeon and an orthopaedic specialist as well as a physical therapist for treatment of his back pain. Plaintiff has also been issued a theraband for exercises to help with pain as well as an abdominal binder to support his back, and he has received numerous MRIs and C spine x-rays as

7



well.  McKinney attests that an MRI of Plaintiff's spine conducted on February 5, 2007 showed Plaintiff with mild cervical stenosis and no fractures, which is consistent with degenerative disc disease. See Bates No. 7702-A-016.  McKinney attests that the neurosurgeon's recommendation was for Plaintiff to continue with conservative treatment, as he was not a candidate for surgery, and that he [McKinney] agrees with this assessment.  See also Bates No. 7702-A-013.

McKinney attests that he has personally never denied Plaintiff treatment at any time, nor does he have any knowledge of Plaintiff being denied medical treatment at any time.  McKinney attests, however, that inmates may be removed from the medical wing for misbehavior, and that Plaintiff has been removed from the medical wing for misbehavior based on this policy.  See generally, McKinney Affidavit, with attached Exhibit A.

As an attachment to his memorandum in opposition to summary judgment, Plaintiff has submitted an "affidavit" (actually arguments against summary judgment) in which he reiterates his claims and argues that the Defendants are attempting to "down play" or minimize the extent of his injuries.  Plaintiff contends that Price did not simply "grab" him, but instead "snatched [him] in a forceful and twisting manner," and that Price's actions were "without any penalogical objectives or goals".  Plaintiff also denies that he had already been through the cafeteria line.  While Plaintiff concedes that he does suffer from a pre-existing condition, that does not "bar [him] from constitutional protection, permitting correctional officers to launch whimsical and egregious attacks upon my person per their fancy."

With respect to the apparent confusion over the identity of "Dr. Duffy", Plaintiff states that he now believes that this individual was in fact "Dr. Walsh", who is listed in the medical records as an orthopaedic doctor.  In any event, Plaintiff argues that he was not provided with reasonable or adequate medical care for his condition.  Plaintiff also complaints that, when he was initially seen



in medical following the incident, Nurse Phillips commented that he had gotten "beat up by a girl", a comment he attests was also made by Dr. McKinney. Plaintiff also complains that he was not seen by Dr. McKinney for twelve (12) days, and that x-rays were not taken until twenty (20) days after Price's "attack". Plaintiff complains that the plan of treatment developed by Dr. McKinney was inadequate, and was designed to minimize the liability of Price. See generally, Plaintiff's Affidavit.

Plaintiff has also submitted a second affidavit in which he attests that he is now housed at the Lee Correctional Facility, that he was not wearing a jacket or jumpsuit at the time of the incident (as alleged by Price), that he had only been through the cafeteria line once that day, and that he did not create a disturbance in the cafeteria. Plaintiff also complains that the Defendants have withheld evidence and documentation from him, and that none of his grievances or results of investigations have been provided to the Court. See Plaintiff's Second Affidavit. Plaintiff also makes arguments against the statements made by the Defendants in their affidavits, and has submitted several exhibits, including a document showing that x-rays were taken of his back on October 23, 2006, that an MRI scan of his cervical spine was taken on February 5, 2007, that an examination of his spine was performed by a Dr. Allen Kantsiper on October 8, 2007 (who noted no definite abnormalities), and that another examination was performed by Dr. John Bayard on October 27, 2006, who diagnosed Plaintiff with spondylosis. Plaintiff has also submitted copies of Defendants' discovery responses.

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.   Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Initially, it must be noted that Plaintiff has, since the filing of this action, been transferred to the Lee Correctional Institution, and is therefore no longer housed at the Kershaw Correctional Institution.  Therefore, Plaintiff's claims or requests for injunctive and/or declaratory relief are no longer viable and are therefore moot.  See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer moots a request for declaratory or injunctive relief]; cf. Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983);  Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dupree v. Lubbock County Jail, 805 F.Supp. 20, 21 (N.D.Tex. 1992) [even where complaint could be construed as requesting injunctive relief, action dismissed for failure to state a claim where plaintiff has been transferred]; Player v. Phoenix, No. 92-401, 1992 WL 350780, at *1 (S.D.N.Y. Nov. 13, 1992) [same].



Plaintiff's claim for monetary damages survives his transfer to the Lee Correctional Institution. Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Nevertheless, after careful review of the arguments and evidence presented by the parties, the undersigned finds and concludes that the Defendants are entitled to summary judgment and to dismissal of all of Plaintiff's claims.

## II.

First, as correctly noted by the Defendants in their motion to dismiss, the originally named Defendant "Dr. Duffy" has never been identified or served in this action. See Court Docket No. 98. Plaintiff has now, belatedly, in his response to the Defendants' motions for summary judgment, identified "Duffy" as perhaps being an orthopaedist he saw, "Dr. Walsh". This individual, of course, assuming he is in fact a physician who ever saw the Plaintiff, has never been previously identified as a potential Defendant in this case, nor has he been named in the pleadings or served with any process. Therefore, this unidentified Defendant is entitled to dismissal as a party Defendant in this case. See Vieux v. Smith, No. 07-299, 2007 WL 1650579 at *4 n. 7 (M.D. Pa. June 5, 2007); Danhi v. Charlotte County Sheriff's Dep't, No. 03-628, 2006 WL 2226323 at ** 3-4 (N.D. Fla. Aug. 3, 2006).

As for the remaining individual Defendants, as public employees they are generally subject to suit for damages under § 1983 in their individual capacities. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is asserting his damages claims against these Defendants in their individual capacities.[3] However, the evidence presented is not sufficient to raise a genuine issue of

---

[3]While neither Ozmint (the Director of the South Carolina Department of Corrections) or
(continued...)

11



fact as to whether Plaintiff's constitutional rights were violated by any named Defendant to survive summary judgment.

**III.**

To the extent Plaintiff is asserting a medical claim, there is no evidence before the Court sufficient to survive summary judgment. In order to establish a claim under § 1983 for denial of medical care, Plaintiff must present sufficient evidence to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).   However, the evidence before this Court includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his complaints and condition. Plaintiff was provided with medication for pain, was provided with equipment to help him with his back problems and pain, and was seen by medical personnel on numerous occasions as well as by outside medical specialists.  Further, a licenced physician who has both provided direct care to the Plaintiff and reviewed his overall medical records attests that Plaintiff has been afforded continuing and adequate care for his longstanding back

---

[3](...continued)
Reynolds (Warden of the Kershaw Correctional Institution) appear to have played any direct role in the conduct complained of by the Plaintiff, they could conceivably be subject to liability for the acts and conduct complained of if this conduct was the result of an official policy or custom for which either of these two Defendants was responsible. See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).   Although no such official policy or custom appears to be present in the evidence before this Court, since the undersigned has determined that Plaintiff's claims are subject to dismissal on the merits, it is not necessary for the Court to reach this question.

12

condition. Plaintiff has himself, as part of his own exhibits, provided copies of medical records showing his receipt of x-rays and MRI scans, none of which support his claims of inadequate medical care.

While Plaintiff may not agree with the extent and nature of the medical care he has received, he cannot simply allege in a conclusory fashion that he has not received adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]).

As for Plaintiff's complaint that he was sometimes denied access to the medical unit or was told to leave that unit, even assuming this allegation to be true (and Defendants do not appear to contest this claim), this does not constitute evidence that Plaintiff was denied adequate medical care. Other than Plaintiff's own general and conclusory allegations, there is no evidence that Plaintiff being told to leave the medical unit on the few occasions where that happened constituted deliberate indifference to a serious medical need. Scheckells, 423 F.Supp.2d at 348. The undersigned can discern no evidence of a constitutional violation under this standard and the evidence presented to

13



the Court, and Plaintiff cannot rely simply on his conclusory claims and allegations to avoid dismissal of his case. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate.  However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, and therefore his federal § 1983 medical claim is subject to dismissal. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## IV.

With respect to Plaintiff's excessive use of force claim against the Defendant Price, this claim is patently without merit. When reviewing allegations of excessive force, the Court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used,  3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them,  4) the efforts made to temper the severity of a

14



forceful response, and 5) the extent of the injuries suffered by the prisoner. <u>Whitley v. Albers</u>, 475

U.S. 312, 321 (1986); <u>Iko v. Shreve</u>, ___F.3d ___, 2008 WL 3018444 at * 9 (4th Cir. Aug. 6, 2008).

<u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was

applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm]; <u>see</u> <u>also</u> <u>United States v. Cobb</u>, 905 F.2d 784 (4th Cir. 1990), <u>cert.</u> <u>denied</u>, 498 U.S. 1049

(1991); <u>Taylor v. McDuffie</u>, 155 F.3d 479 (4th Cir. 1998); <u>Norman v. Taylor</u>, 25 F.3d 1259, 1263

(4th Cir. 1994); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 342 (3d Cir. 2000); <u>Wilson v. Williams</u>, 83 F.3d

870, 873 (7th Cir. 1996) [applied to pretrial detainee]; <u>Thomas v. Sawyer</u>, No. 97-2475, 1999 WL

155704 at *3 (N.D.Tex. Mar. 11, 1999); <u>Moore v. Martinez County Jail</u>, No. 98-731, 1998 WL

602113 at *2 (N.D.Cal. Sept. 4, 1998).

　　　　Even under Plaintiff's version of this event, the physical contact and confrontation

between Plaintiff and Price was only minimal, lasting at most a few seconds, and the mere fact that

Plaintiff was physically restrained does not mean that Plaintiff's constitutional rights were violated.

<u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"].

Defendants exhibits also support the minimal and brief nature of this confrontation, and they have

also submitted an affidavit from a licensed physician who attests that Plaintiff did not suffer any

significant or serious injury as a result of this one particular incident.  While Plaintiff does appear

to have a degenerative back condition, the medical record reflects that he has received on-going care

and evaluation for this condition, including on the day of this incident, and there is simply no

evidence to support a finding that Plaintiff suffered any significant injury solely as a result of Price's

conduct, or that Price acted with a sufficiently culpable state of mind to engage in conduct harmful

to the Plaintiff.  <u>See</u> <u>generally</u>, <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993) [in order to



15

establish a constitutional claim, an inmate must show not only a sufficiently serious deprivation of a basic human need, but that the offending official engaged in the alleged adverse conduct with a sufficiently culpable state of mind]; Hudson, 503 U.S. at 7. [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; Norman, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis].

The evidence does not show excessive force was used under the circumstances in this case. Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, his assertion of a constitutional claim is without merit.  See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed. See Farmer v. Brennen, 511 U.S. at 837 [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); see also Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"].

## V.

The remainder of Plaintiff's assertions are essentially a hodge podge of varying conclusory claims and allegations.  To the extent Plaintiff contends that prison authorities were out to "get him" or otherwise were engaging in some kind of conspiracy against him, this bald assertion,

16



without more, is not sufficient to survive summary judgment. *Cf.* <u>Simmons v. Poe</u>, 47 F.3d 1370, 1377 (4th Cir. 1995) ["We have specifically rejected Section 1985 claims whenever the purported conspiracy is alleged in a mere conclusory manner"]. Plaintiff's claims that the Defendants have not properly followed their own policies and procedures, even if true, also fail to set forth a claim of a constitutional magnitude. <u>See</u> <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]). <u>See also</u> <u>Scott v. Hamidullah</u>, C/A No. 3:05-3027-CMC-JRM, 2007 WL 904803 *5 n.6 (D.S.C. March 21, 2007) (citing <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)); <u>Johnson v. S.C. Dep't of Corrections</u>, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue].

Plaintiff's claims of retaliation by prison officials suffer from the same infirmity. <u>Woods v. Edwards</u>, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; <u>Atkinson v. Bohn</u>, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; <u>Wright v. Vitall</u>, No. 91-7539, 1991 WL 127597 at **1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; <u>LaCroix v.Williams</u>, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff



17

produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus].  Therefore, none of these allegations present claims sufficient to survive summary judgment.

**<u>Conclusion</u>**

Based on the foregoing, it is recommended that the Defendants' motions to dismiss and/or for summary judgment be **granted**, and that this case be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 12, 2008

18



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

